UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

-----------------------------------------------------------X

JOSEPH Y. NAPARSTEK, on behalf of himself
and a class of similarly situated individuals,

        Plaintiff,                        Case No.: 11-cv-2026 (RBH)

    v.

ATLANTIC CREDIT & FINANCE, INC.,

        Defendant.
-----------------------------------------------------------X

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Plaintiff, Joseph Y. Naparstek ("Plaintiff" or "Naparstek"), respectfully requests that this Court enter an order determining that this Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq.* (the "FDCPA" or the "Act") action may proceed as a class action against defendant Atlantic Credit & Finance, Inc. ("Atlantic"). The FDCPA specifically contemplates class actions as its principal enforcement mechanism. Plaintiff seeks to certify a class, defined as:

(a) all natural persons with South Carolina addresses,

(b) who were sent a letter in the form of Exhibit A to the complaint herein showing the creditor as Atlantic,

(d) on or after January 21, 2010, and

(e) on or before February 11, 2011.

1

Plaintiff further requests that Philip Fairbanks and Shimshon Wexler be appointed counsel for the class.

In support of this motion, plaintiff states:

## I.    NATURE OF THE CASE

1. This case arises out of a collection letter that Richardson Plowden & Robinson, P.A., acting as attorneys for Atlantic, mailed to the plaintiff. *Exhibit A to Complaint.*

2. Plaintiff alleges that by sending Exhibit A, defendant violated the last sentence of 15 U.S.C. §1692g(b) and §1692e of the FDCPA.

3. Section 1692g of the Act states:

> (a) **Notice of debt; contents**
>
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.
>
> (b) **Disputed debts**
> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is

> disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. *Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.*

*Id.* (Emphasis added).

4.      Section 1692e of the Act states that a debt collector may not use any false, deceptive or misleading representation or means in connection with the collection of a debt.

5.      Two different sections of the letter were inconsistent with or overshadowed the consumer's right to dispute the debt. The letter stated that "This notice should not be construed as a thirty day grace period. Creditor may pursue collection efforts immediately and not wait thirty days." The letter also stated that "Failure to resolve the outstanding balance within thirty days may result in Atlantic Credit & Finance, Inc. seeking its legal remedies."

6.      The letter was deceptive because it can be interpreted to mean that even if the consumer disputes the debt within 30 days of receipt of the letter, Atlantic still had the right to commence a lawsuit "immediately" without providing verification of the debt. The FDCPA, §1692g, demands the exact opposite, *i.e.,* that activities aimed at collection of the debt must cease as soon as the consumer disputes the debt.

## II.     CLASS CERTIFICATION REQUIREMENTS

7.      All requirements of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure are met in this case. As noted, the FDCPA, specifically its subsection on damages, §1692k,

contemplates a class action. Section 1692k(a)(B) states:

> in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A) [$1,000], and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector….

*Id.*

8.     As further noted, Plaintiff seeks to represent a class, consisting of: (a) all natural persons with South Carolina addresses, (b) who were sent the notice in the form of Exhibit A on behalf of Atlantic, (c) on or after January 21, 2010, and (d) on or before February 10, 2011.

9.     The class action device is a procedural mechanism designed to conserve the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23. *E.g., General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 155 (1982). Rule 23 permits a case to be maintained as a class action if the prerequisites of Rule 23(a) are satisfied and if the class meets the requirements of *any* of the three subsections of Rule 23(b). *See Fed. R. Civ. P. Rule 23(a) & (b); see also, Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 614 (1997). On the issue of class certification, the ''question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.'' *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974).

10.     Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility in application in order to best serve the ends of justice and promote judicial economy. *See e.g., In re A.H. Robins Co.,* 880 F.2d 709 (4th Cir.1989). Moreover, if an error is to be made with respect to class certification, it is to be "in favor and not against the maintenance of a class action." *Gordon v. Hunt,* 98 F.R.D. 573, 577 (S.D.N.Y.

4

1983), *discussing Green v. Wolf Corp.,* 406 F.2d 291, 298 (2d Cir.1968), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969). *See also Sharif v. New York State Educ. Dep't*, 127 F.R.D. 84, 87 (S.D.N.Y. 1989) (Same).

11.     As set forth below, this preprinted form letter class action presents a paradigmatic example of the sort of case the class action device was designed to accommodate. Because the proposed class satisfies the requirements of Rule 23(a) and Rule 23(b)(3), the class should be certified.

12.     The four threshold requirements of Rule 23(a) are:

(i)     numerosity (''the class is so numerous that joinder of all members is impracticable'');
(ii)    commonality (''there are questions of law or fact common to the class'');
(iii)   typicality (''the claims or defense of the representative parties are typical of the claim or defenses of the class''); and
(iv)    adequacy of representation (''the representative parties will fairly and adequately protect the interests of the class'').

*Fed. R. Civ. P., Rule 23(a).*

13.     Here, the class is so numerous that joinder of all members is impracticable. Plaintiff is informed and believes that <u>Exhibit A</u> is a form letter sent on Atlantic's behalf to numerous consumers in South Carolina in an attempt to collect defaulted debts purchased by Atlantic from the original creditors.

14.     South Carolina State Court records reveal that there are at least 200 class members. Shortly after the case was assigned to South Carolina and Atlantic got new counsel, a conference call was held amongst Philip Fairbanks, Shimshon Wexler counsel for plaintiff and Thomas Bunch, II, counsel for Atlantic. Mr. Bunch confirmed that the collection letter at issue had been used in over 200 accounts in South Carolina.

15.     The focus of the numerosity requirement is judicial economy. It presents "an

impracticability of joinder requirement, of which class size is an inherent consideration...."
1 Herbert B. Newberg & Alba Conte, *Newberg On Class Actions* ("Newberg") § 3:3, at 218 (4th ed. 2002). *See also* 1 *Newberg* § 3:5, at 247 ("In light of prevailing precedent, the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone.").

16.     Rule 23(a)(1) incorporates no bright-line test for determining numerosity. This determination rests on the court's practical judgment in light of the particular facts of the case. *Newberg, supra.* A plaintiff need not allege the exact number and identify all of the class members, but must only establish that joinder is impracticable through some evidence or reasonable estimate of the number of purported class members. *Cypress v. Newport News General & Nonsectarian Hospital Ass'n,* 375 F.2d 648, 653 (4th Cir. 1967); *Kilgo v. Bowman Transportation, Inc.,* 789 F.2d 859, 878 (11th Cir.1986); *Anderson v. Bank of South, N.A.,* 118 F.R.D. 136, 145 (M.D.Fla.1987); *Zeidman v. J. Ray McDermott & Co.,* 651 F.2d 1030, 1038 (5th Cir.1981). A close question should be resolved in favor of a finding of numerosity. *Kreuzfeld A.G. v. Carnehammar,* 138 F.R.D. 594 (S.D. Fla. 1991).

As one court put it:

> Although the plaintiff has supplied the Court merely with *an informal estimate* of the number of potential class members, the Court is cognizant of the principal that the exact number need not be averred. For the purposes of the present case, *the Court finds it sufficient that the plaintiff's estimate is an informed one and not the result of unwarranted speculation. When it becomes appropriate to effect notice to potential class members, NSC's records may be utilized to ensure accuracy.*

*Peil v. National Semiconductor Corp.***,** 86 F.R.D. 357 (D.C. Pa. 1980) (Emphasis added).

17.     Discovery should be allowed to determine numerosity if the number of putative class members is, as here, based on a reasonable estimation. In *Mitchell-Tracey v. United*

6

*General Title Ins. Co.,* 2006 WL 149105 (D.Md. 2006) the court held that where discovery was ongoing as to the issue of the maintainability of the case as a class action, a denial of class certification was premature, citing *Doctor v. Seaboard Coast Line Rail Road Co.,* 540 F2d 699 (4th Cir. 1976). Plaintiff has propounded discovery requests which are designed, *inter alia*, to establish the number of South Carolina residents to whom Exhibit A was sent during the relevant period. At this stage of the litigation, any doubts regarding class certification should be resolved in its favor. *E.g., Sharif v. New York State Educ. Dep't*, *supra.*

18.     There are questions of law and fact common to the class members, which predominate over any questions that affect only individual class members.  The predominant common question is whether sending the letters violated the FDCPA.

19.     Plaintiff's claim is typical of the claims of the class members.  All are based on exactly the same factual and legal theories.

20.     There is a low threshold for commonality, and there is no requirement that the claims of the named Plaintiff be identical to, but merely that they be based on the same legal theories and arise from the same practice or course of conduct, as the claims of the class members. *In re Coggin,* 155 B.R. 934 (Bankr. E.D.N.C. 1993). Indeed, "the commonality element is satisfied if at least one factual or legal question is shared by all class members.  There need only be a single issue common to all members of the class." *In re Protected Vehicles, Inc.*, *supra.*

21.     Because the allegations of the complaint, with respect to the named Plaintiff and to the members of the putative class, are based on the use by the defendant of a standard collection letter, which the named Plaintiff and all (other) class members by definition were sent, essentially the *only* questions before the Court are common questions, *e.g.,* whether Exhibit A

7

violates the Act; whether class members are "consumers"; whether Atlantic is a "collector"; whether Atlantic is vicariously liable for the actions of its attorneys, and others.

22.     For the same reasons, Plaintiff's claims are "typical" of the claims of the other members of the class he seeks to represent. "Typicality is satisfied if the putative class's claims arise from the same 'event or course of conduct' and are 'based on the same legal theory' as the plaintiff's." *Simpson v. Specialty Retail Concepts, Inc.,* 149 F.R.D. 94, 99 (M.D.N.C.1993). Because the claims being asserted by the named Plaintiff are the same as the claims being asserted by the named Plaintiff on behalf of the class he seeks to represent, the "typicality" requirement of Rule 23(a) is clearly met.

23.     A court considering a motion for class certification must assure that the party seeking to represent the absent class members will fairly, adequately and vigorously represent the interests of those absent members. *Rule 23 (a)(4);* 3 *Newberg on Class Actions,* 7:24 (3rd ed. 1992). This element reflects the fact that the judgment in a class action is binding on the absent class members, who have no voice in the choice of their spokesman or attorney. Absent evidence to the contrary, it is generally presumed that named-plaintiffs and their counsel will adequately represent a class. *E.g., Moss v. Lane Co.,* 50 F.R.D. 122 (W.D. W.Va. 1970), *aff'd and remanded*, 471 F.2d 853 (4th Cir. 1973).

24.     "In most cases, adequate representation presumptions are…invoked in the absence of contrary evidence by the party opposing the class." *Newberg on Class Actions, supra.* The class representative must not only possess the same interests as the class but also have suffered the same injury.  Class representatives must voluntarily accept a *fiduciary obligation towards all members of the putative class.*  Additionally, the Court must find that counsel for the class is competent. The second element of Rule 23(a)(4) is met where plaintiff's counsel is

"qualified, experienced and generally able to conduct the proposed litigation." *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968), *cert. denied*, 417 U.S. 156 (1974).

25.     Plaintiff will fairly and vigorously represent the interests of the class members, and has indicated his comprehension of the fiduciary nature of the office of class representative. Additionally, Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases, as well as class action litigation in both state and federal courts. Neither plaintiff nor class counsel have any interests antagonistic to the interests of the class members. Thus, Rule 23(a)(4) is satisfied.

26.     Class certification under Rule 23(b)(3) is appropriate when the court finds that there are "questions of law or fact common to the class members [which] predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Rule 23(b)(3).* "In finding that common questions do predominate over individual ones in particular cases, courts have pointed to such issues that possess the common nucleus of fact for all related questions, *have spoken of a common issue as the central or overriding question*, or have used similar articulations." 2 *Newberg* § 4:25, at 172-73. (Internal citations omitted). (Emphasis added).

27.     The named Plaintiff alleges that the class members all suffered harm at the hands of the Defendant in the same manner. These allegations unite the class in interest, making it economical to litigate the claims in one suit. *See, Blackie v. Barrack,* 524 F.2d 891, 902 (9th Cir. 1975), *cert. denied* 429 U.S. 816, 97 S. Ct. 57, 50 L. Ed. 2d 75 (1976). Additionally, the allegations of the complaint establish the predominance of the question of Atlantic's use of the letter, <u>Exhibit A</u>, and its legal significance, as "the central or overriding question" of the case, to borrow Newberg's "articulation" of the predominance question. *Rodger v. Electronic Data*

*Systems Corp.*, 160 F.R.D. 532 (E.D.N.C. 1995).

28.     If Plaintiff establishes that Atlantic sent class members the offending letter, that the letter violates the Act, that its violation entitles them to the remedy provided for by the Act, and that an award of attorney's fees is appropriate as to himself and his claim, and the other relief he seeks, he will, *ipso facto,* have established as much for the class.

29.     It is worth noting that the injury here is limited to economic harm, which means that no inquiry into the class members' physical or mental states (*e.g.,* reliance) is required. Resolving this case on a class-wide basis requires nothing more than a legal ruling on the legality of Atlantic's use of Exhibit A in an "attempt[] to collect a debt." Courts everywhere "have consistently certified classes involving economic harms." *Shaw v. Toshiba Am. Info. Sys. Inc.,* 91 F. Supp. 2d 942, 958 (E.D. Tex. 2000).

30.     The foregoing demonstrates that virtually the only individual fact to be determined here – whether Atlantic's attorneys sent a class member Exhibit A – can be confirmed through Atlantic's own records and is completely objective. When, as here, class members' identities and identifying information are easily ascertainable through a defendant's records, the class should be certified. *See* 2 Newberg § 4:26, at 225-232 & 229 n.92 *and cases cited therein*.

31.     For Rule 23(b)(3) certification to be proper, a class action also must be the most "fair and efficient" method of resolving the controversy. *See Rule 23(b)(3).* In analyzing that question, courts must consider four nonexclusive factors: "(a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the

particular forum; and (d) the difficulties likely to be encountered in the management of a class action." *Id.*

32.     The Supreme Court, in *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797 (1985), recognized that without a class action, many claims would never be adjudicated: "Class actions also may permit the Plaintiff to pool claims which would be uneconomical to litigate individually . . . ." *Id.,* at 809; *see also Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980) (When it is economically infeasible for claimants to file individual damage suits, aggrieved persons may be without effective relief unless the class action remedy is available).

33.     By maintaining this action as a class action, savings in time, effort, and expense will be achieved by both the Court and parties to this action. One of the advantages of maintaining this action as a class action is that persons who are members of the class, and who have claims which might not otherwise warrant individual actions, will be provided with a method for the redress of their claims. Additionally, the maintenance of this action as a class action will eliminate the possibility of repetitious litigation which might result in the establishment of incompatible standards of conduct for the defendant and others in the defendant's circumstances. Thus, the interest of the class members, the Defendant, and other creditors in judicial economy lies in single class adjudication rather than individualized adjudications.

34.     Accordingly, "a class action is superior to other available methods for fairly and efficiently adjudicating of this controversy." *Rule 23(b)(3)*.

35.     Plaintiff's counsel include Shimshon Wexler, whose practice focuses exclusively on class action litigation involving violations of the Fair Debt Collection Practices Act. Mr. Wexler has been lead or co-counsel in numerous such class actions in federal courts. Philip

Fairbanks has been co-counsel in consumer class action cases filed in both state and federal courts in this and other jurisdictions for over a decade.

Together, plaintiff's counsel are highly experienced in prosecuting claims under the FDCPA, specifically, and in consumer class action litigation generally. It is appropriate the Court appoint attorneys Wexler and Fairbanks class counsel in this matter.

WHEREFORE, Plaintiff has moved for, and submits the foregoing points and authorities in support of, an Order:

A. Certifying this action as a Rule 23(b)(3) "opt-out" class action;

B.  Appointing Philip Fairbanks of Philip Fairbanks, Esq., P.C., and Shimshon Wexler of The Law Offices of Shimshon Wexler, P.C. class counsel; and

B. For such other and further relief as the Court deems appropriate.


Respectfully Submitted,

PHILIP FAIRBANKS, ESQ., P.C.

/s/ Philip Fairbanks
District Court Identification Number 756
1214 King Street
Beaufort, SC 29902
Telephone: (843) 521-1580
Telefax: (843) 521-1590

Beaufort, South Carolina

March 8, 2012


Shimshon Wexler
The Law Offices of Shimshon Wexler, PC
2710 Broadway, 2FL
New York, New York 10025
(212) 760-2400
(917) 512-6132 (fax)

Email: swexleresq@gmail.com


Philip Fairbanks
PHILIP FAIRBANKS, ESQ., P.C.
1214 King Street
Beaufort, SC 29902
(843) 521-1580
(843) 521-1590 (fax)
Email: philip@lowcountrybankruptcy.com



<u>DUTY TO CONSULT BEFORE FILING ANY MOTION</u>

      Pursuant to Local Rule 7.02: *Duty to Consult before Filing any Motion*, I, Philip L Fairbanks, affirm that prior to filing this Motion for Class Certification, I conferred with opposing counsel and was unable to resolve the matter contained herein.


                                            /s/ Philip Fairbanks

**CERTIFICATE OF SERVICE**

  I, Philip Fairbanks, certify that on March 8, 2012, a copy of this document was sent via email and U.S. mail to the Atlantic Credit and Finance, Inc., addressed as follows:

Thomas W. Bunch II, Esq.
Post Office Box 944
Columbia, SC 29202

E-mail:   tbunch@robinsonlaw.com

                /s/ Philip Fairbanks_____
                Philip Fairbanks