UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

----------------------------------------------------------------X

JOSEPH Y. NAPARSTEK, on behalf of himself
and a class of similarly situated individuals,

        Plaintiff,                   Case No.: 11-cv-2026 (RBH)

    v.

ATLANTIC CREDIT & FINANCE, INC.,

        Defendant.
----------------------------------------------------------------X

PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO
MOTION FOR JUDGMENT ON THE PLEADINGS (DOC. 27)

INTRODUCTION

      Plaintiff has alleged that Defendant, Atlantic Credit & Finance, Inc., (hereinafter "Atlantic") through its attorneys, Richardson Plowden, P.A., (hereinafter "Richardson Plowden") mailed Plaintiff a letter that violated the Fair Debt Collection Practices Act, 15 USC 1692 *et seq.* (hereinafter the "FDCPA" or the "Act"). Specifically, Plaintiff alleges that the letter violates the provision of the Act which states "Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor". Plaintiff also generally alleges that the letter is deceptive and misleading.

1

### I.     <u>Vicarious Liability</u>

In Atlantic's initial motion, Atlantic contended "there is no conduct undertaken by Defendant to connect it to Plaintiff's FDCPA violations." In their Response to Plaintiff's motion for judgment on the pleadings, however, Atlantic apparently concedes that there *would be* vicarious liability for this FDCPA violation *if* Atlantic's attorney is also a "debt collector" as defined by the FDCPA. Atlantic nevertheless argues that since its attorney is *not* a "debt collector" as defined by the FDCPA, vicarious liability does not apply. *Defendant's Response to Plaintiff's Motion For Judgment On The Pleadings, Doc. 34,* at 2-3. "In order for Plaintiff to prevail on his claims, he must prove that Richardson Plowden was a 'debt collector.'" *Id.* at 3.

Atlantic's argument fails because Richardson Plowden is a "debt collector" as defined by the FDCPA. Moreover, even if this Court were to accept Atlantic's erroneous contention that the law firm it employs to collect its delinquent debts is not a "debt collector", there is still no support for Atlantic's position. The rule for imposition of vicarious liability for a debt collector's attorney's non-compliant collection activities, established by virtually all the courts which have considered the question, does not distinguish between attorneys who are themselves "debt collectors" and attorneys who are not.

A.     *Richardson Plowden is a Debt Collector*

According to its website, "Richardson Plowden represents commercial and consumer lenders and private companies with regard to collection of outstanding debts. This includes medical bills, credit card loans, mortgage foreclosures, installment loans, subrogation, the recovery of personal property and other related matters." *See,* http://www.rpcrlaw.com/practice/p7.php

>A "debt collector" is defined by the FDCPA as:
>
>[A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, *or* who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another….

11 U.S.C. §1692(a)(6) (Emphasis added).

In other words, under the FDCPA, an entity meets the definition of a "debt collector" if it *either* has a "principal purpose" of collecting debts *or* if it regularly "collects or attempts to collect…debts…due another…." *Id.* "The Act regulates interactions between consumer debtors and 'debt collector[s],' defined to include any person who *'regularly collects… debts owed or due or asserted to be owed or due another.* §1692(a)(5), (6)'" *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, LPA*, 130 S.Ct. 1605 (2010) (Emphasis added). Thus, Atlantic's suggestion that in order to be classified as a "debt collector", Richardson Plowden must have a *principal purpose* of collecting debts is incorrect, as the statute uses the word "or", not the word "and".

Richardson Plowden has filed well over 200 personal debt collection lawsuits in the state of South Carolina during the one year period preceding the filing of the Complaint in this action. This is a matter of public record and Atlantic does not dispute this. In fact, the second page of the letter itself says "NOTICE REQUIRED BY THE FAIR DEBT COLLECTION PRACTICES ACT…" and is, therefore, an admission that Richardson Plowden is a debt collector and is, therefore, required to comply with the FDCPA.

Further, the Complaint alleges in Paragraph 12 that the letter sent to Plaintiff is a standard form document. This means that Richardson Plowden did not draft a letter specifically for Plaintiff; rather, the document is a form letter which it regularly uses to collect or attempt to collect debts from other alleged debtors as well. Paragraph 13 alleges that 100 or more letters

similar to the Plaintiff's were mailed. Paragraph 15 states that the letter sent to Plaintiff is "regularly sent to collect delinquent debts".

Plaintiff has clearly shown that both Richardson Plowden and Atlantic regularly collect or attempt to collect debts.

B.  *Vicarious Liability for FDCPA Violations Applies When the Entity Employing the Attorney is a "Debt Collector", Regardless of Whether the Attorney is a "Debt Collector"*

If the Court were to find that Richardson Plowden is a "debt collector", Atlantic's vicarious liability argument fails. However, in the unlikely event that the Court finds that Richardson Plowden is not a "debt collector", this section explains why vicarious liability would still apply.

As cases cited by Atlantic establish, the rule for vicarious liability is that "an entity which itself meets the definition of 'debt collector' may be held vicariously liable for unlawful collection activities carried out by another on its behalf." *Pollice v National Tax Funding, LP,* 225 F.3d 379, 404 (3d Cir. 2000). Vicarious liability passes to Atlantic for the collection activities of its attorneys and it does not depend on whether or not the attorneys are classified as "debt collectors".

Each of the cases cited by Atlantic is factually distinguishable from the instant case. Here, Atlantic admits it is a "debt collector" but argues that it shouldn't be held accountable for the actions of its attorneys because its attorneys are somehow not "debt collectors". Each of the cases cited by Atlantic involved the situation where an entity hired a "debt collector" to carry out its collection work and the question was whether the principal hiring the "debt collector" may be held vicariously liable for the conduct of its agent.

4

Each of those cases holds that where a "debt collector" (such as Atlantic in our case) has an agent carry out its collection work, the "debt collector" is liable for the agent's FDCPA violations. Contrary to the implication in Atlantic's *Response,* none of the cases it cites holds that in order for a debt collector to be liable for the conduct of its agent *both* entities must be "debt collectors." As the court in *Pollice* stated: "an entity that is itself a 'debt collector' - and hence subject to the FDCPA - should bear the burden of monitoring the activities of those it enlists to collect debts on its behalf." *Pollice, supra,* at 405.

According to Atlantic's interpretation of the statute, Atlantic would be free to enlist lawyers (or other agents) who were not "debt collectors" but who violated the FDCPA in the collection of debts on Atlantic's behalf, and, by doing so, escape FDCPA liability. This surely is an absurd result and is irreconcilable with the goals and stated purposes of the FDCPA, which is to give consumers specific rights and protections against deceptive and abusive collection practices. This was the holding in *Fox v. Citicorp Credit Services, Inc.,* 15 F.3d 1507 (9th Cir.1994), discussing an early version of the FDCPA, which provided a blanket exemption for the actions of attorneys from liability under the Act. The "attorney" exemption was removed by Congress nine years after the FDCPA was enacted. The defendant in *Fox,* Citicorp, argued that it could not be held vicariously liable for the actions of its attorney in purposely selecting inconvenient venues in which to sue consumers. The *Fox* court noted:

> Under Citicorp's theory, for the first nine years after the FDCPA became law, no attorney could *ever* have been liable and no collector could have been *vicariously* liable for the actions of his attorney; therefore, liability could rarely if ever have rested on a venue violation.[FN9] In order to give reasonable effect to section 1692i, we must conclude that Congress intended the actions of an attorney to be imputed to the client on whose behalf they are taken.
>
> [FN9] Liability could have existed only if a pro se who qualified as a debt collector filed the action.

5

*Id.* at 1516. (Emphasis in original).

## II.     The Letter Sent by Richardson Plowden Violates the FDCPA

In its original response, Atlantic did not argue that the letter sent by Richardson Plowden complied with the FDCPA. Instead, Atlantic's entire argument rested on the faulty premise that vicarious liability was not applicable. The only portion of Atlantic's pleading that even addressed the merits of compliance, *vel non,* was a misstatement about the contents of the letter.

Atlantic claimed that the letter contained the following statement: "Only upon the expiration of 30 days after the date of the letter <u>may</u> Defendant seek its legal remedies." (Emphasis by Atlantic). *Defendant's Memorandum In Support of Its Motion For Judgment on the Pleadings as to All Claims,* Entry 26-1 at 5, Feb. 22, 2012. As Atlantic apparently now concedes, the letter never contained this statement or anything similar to it.

Atlantic argues that it did not violate the FDCPA because (1) the letter contained the statutorily required thirty (30) day validation language and, (2) the Plaintiff's interpretation is allegedly so "bizarre and idiosyncratic" that even under the "least sophisticated consumer test" required to be used in determining a violation, the letter cannot mislead a recipient.[1] Atlantic is incorrect on both points.

In *Garcia-Contreras v. Brock & Scott, PLLC*, 775 F. Supp. 2d 808 (M.D.N.C. 2011), the Court specifically held that mere inclusion of the thirty (30) day validation notice does not

---

[1] "But this standard 'does not go so far as to provide solace to the willfully blind or non-observant' and protects debt collectors 'from liability for bizarre or idiosyncratic interpretations of collection notices.'" *Campuzano-Burgos v. Midland Credit Mgmt., Inc.,* 550 F.3d 294, 299 (3d Cir. 2008). Plaintiff's contention that the language in the letter at issue, at once stating that legal action might commence immediately absent payment, while simultaneously stating that he had thirty (30) days to seek validation of the debt was confusing, or that the former could easily "overshadow" the effectiveness of the latter, cannot be characterized as either "bizarre or idiosyncratic", as the number of similar cases involving nearly identical claims makes clear.

absolve a defendant from liability if the notice is not effectively conveyed or "overshadowed" so as to undermine its effectiveness:

> Courts have long interpreted § 1692g as requiring that the validation notice be "conveyed effectively to the debtor." *Miller v. Payco-Gen. Am. Credits, Inc.*, 943 F.2d 482, 484 (4th Cir. 1991) (*quoting Swanson v. Southern Oregon Credit Serv., Inc*., 869 F.2d 1222, 1225 (9th Cir. 1988) (per curiam). *Mere inclusion of the validation notice in the debt collector's initial communication with the consumer is insufficient to satisfy § 1692g. Id.* Rather, the validation notice "must be placed in such a way [as] to be easily readable, and must be prominent enough to be noticed by an unsophisticated consumer." *United States v. Nat'l Fin. Servs., Inc.,* 98 F.3d 131, 139 (4th Cir. 1996). Moreover, *"in order to be effective, 'the notice must not be overshadowed or contradicted by other messages or notices appearing in the initial communication.'" Miller*, 943 F.2d at 484 (*quoting Swanson*, 869 F.2d at 1225).

*Id.* at 813. (Emphasis added).

In this case, the letter states: "We would like very much to resolve this in an amicable manner and would appreciate your contacting me at 803-253-8720 within the next 30 days to discuss how the account can be satisfied. Failure to Failure to resolve the outstanding balance within 30 days may result in ATLANTIC CREDIT & FINANCE INC. seeking its legal remedies." Thus, the letter put Plaintiff on notice that Plaintiff had the option of resolving the alleged debt in an amicable fashion within 30 days or be faced with a lawsuit.

On the next page of the letter in paragraph 4, the Plaintiff's right to dispute and request verification of the debt is given. Paragraph 7 then states: "This notice should not be construed as a thirty (30) day grace period. Creditor may pursue collection efforts immediately and not wait thirty (30) days." Paragraph 7 is telling the Plaintiff quite clearly that Atlantic may institute collection efforts immediately, without giving plaintiff any period of time in between his receipt of the letter and the 30 day period.

A perfectly normal reaction to receiving this letter by any consumer, and especially the "least sophisticated consumer", would be to interpret this letter as stating that there is no grace

7

period and payment must be made immediately or a lawsuit may be instituted immediately. While it is true that the letter gave Plaintiff 30 days to dispute the debt, the letter also told Plaintiff that the notice should not be construed as a grace period. Thus, while the consumer was told that he had 30 days to dispute the debt, he was also being told that he did **not** have 30 days prior to the commencment of a lawsuit against him, and that he needed "to resolve the outstanding balance" immediately.[2]

In addition, there was no explanation in the letter that a lawsuit does **not** deprive the consumer of his validation rights. It is true that a lawyer may be able to understand the concept that he has an absolute right to demand verification of the debt within 30 days regardless of any other collection activities or that a lawsuit is likely to require more than thrity days to result in an enforceable judgment. However, viewed from the perspective of the "least sophisticated consumer", as communications must be under the FDCPA, this communication could very easily induce a "least sophisticated consumer" to waive his rights and "resolve the outstanding balance" immediately.

The letter at issue in this case is similar to the letter at issue in the *Garcia-Contreras* where the Court distinguished a case cited by Atlantic: "Defendants' letter contains a heavy-handed demand effectively for immediate payment with no explanation of its relationship to Garcia-Contreras' validation rights, distinguishing this letter from the letter in Peter." *Garcia-Contreras*, *supra,* 775 F. Supp. 2d at 821.

---

[2] "In the context of a consumer debt, *a reasonable perception of consumers is that* if a consumer debt is being handled on behalf of the [collector] by a law firm and if the amount of money that the law firm is seeking (or some lesser settlement amount) is not paid, then the *lawyer(s) will use the legal process with which they are familiar and for the use of which they are specifically trained to obtain a mandatory order of payment, which order will be enforceable by penalties within the power of courts to impose.* The implication that a communication to a consumer concerning a debt is from an attorney has a particular and well-known and well-understood effect. *That is explicitly recognized in and incorporated into § 1692e.*" Lesher v. Law Office of Mitchell N. Kay, P.C., 724 F.Supp.2d 503, 509 (M.D.Pa. 2010) (Emphasis added)..

Likewise, while a collector may to tell a consumer that he can be sued immediately, that information alone, without an explanation as to how that effects, or doesn't effect, the consumer's right to request validation, violates the FDCPA. In *Savino v. Computer Credit, Inc.*, 164 F.3d 81 (2d Cir. 1998) the Court in finding an overshadowing violation stated:

> We emphasize that [the debt collector's] request for immediate payment did not, standing alone, violate the FDCPA. Rather, [the debt collector's] violation of the Act consisted of its decision *to ask for immediate payment without also explaining that its demand did not override the consumer's rights under Section 1962g to seek validation of the debt.* [The debt collector] could have both sought immediate payment and complied with the Act simply by inserting into the text of its letter transitional language that referred the addressee to the validation notice. For example, [the debt collector] might have added one of the following paragraphs to its demand letter:
>
>> Although we have requested that you make immediate payment or provide a valid reason for nonpayment, you still have the right to make a written request, within thirty days of your receipt of this notice, for more information about the debt. Your rights are described on the reverse side of this notice.
>>
>> Our demand for immediate payment does not eliminate your right to dispute this debt within thirty days of receipt of this notice. If you choose to do so, we are required by law to cease our collection efforts until we have mailed that information to you. Your rights are described on the reverse side of this notice.
>
> In our view, the inclusion of this or similar language would effectively inform a consumer as to his or her rights under the FDCPA without imposing an undue burden on a debt collector's legitimate efforts to obtain the prompt payment of debts.

*Id.* at 86.

In order for Atlantic to have complied with the FDCPA, it was required to place such transitional language in the letter informing the debtor that his right to dispute the debt were not affected by Atlantic's right to bring immediate suit. Because the letter failed to advise Plaintiff of this, the letter violates the FDCPA.

> Without a clear explanation of the simple concept that [a collector] must cease litigation if [the consumer] disputes the debt, the least sophisticated consumer is likely to wonder what good it would do him to dispute the debt if he cannot stave off a lawsuit. Consequently, [a collector's] threat of immediate lawsuit, court costs, and attorney fees

9

may well encourage the least sophisticated consumer to make a hasty payment rather than dispute the debt. [Collector's] letter therefore violates 15 U.S.C. § 1692g.

*Dunn v. Derrick E. McGavic, P.C.,* 653 F. Supp. 2d 1109 (D.Or. 2009).

"Whether the debt collector's letter complies with the statute is determined objectively; the inquiry is whether an 'unsophisticated consumer or debtor' would be confused by the contents of the letter." *Bicking v. Law Offices of Rubenstein and Cogan,* 783 F.Supp.2d 841, 845 (E.D.Va. 2011) *quoting McKinney v. Cadleway Props., Inc.,* 548 F.3d 496, 503 (7th Cir.2008).

**Conclusion**

Atlantic's response to Plaintiff's motion for judgment on the pleadings fails to answer and rebut Plaintiff's points in support of the motion.

Atlantic is vicariously liable for its attorneys' FDCPA violations irrespective of the latters' status as "debt collectors."

Atlantic's theory that its letter does not violate the Act because it contains the requisite validation language has been repeatedly rejected by the courts. The courts considering the simultaneous inclusion of validation language and language threatening immediate or imminent legal action, have virtually unanimously required debt collectors to also include "transitional" language explaining that the latter does not "trump" the former. Atlantic's letter failed to do so, and, as a result, violated the Act's "overshadowing" and "misleading" provisions.

Plaintiff is entitled to judgment on the pleadings.

    Respectfully submitted,

    /s/ Philip Fairbanks
    Philip Fairbanks  DCID # 756
    1214 King Street
    Beaufort, SC 29902
    Telephone: (843) 521-1580
    Telefax: (843) 521-1590
    Email: philip@lowcountrybankruptcy.com

Shimshon Wexler
The Law Offices of Shimshon Wexler, PC
2710 Broadway, 2FL
New York, New York 10025
Telephone: (212) 760-2400
Telefax: (917) 512-6132 (fax)
Email: swexleresq@gmail.com

Attorneys for the Plaintiff

## CERTIFICATE OF SERVICE

I, Philip Fairbanks, certify that on March 28, 2012, a copy of this document was sent via e-mail and U.S. mail to the following party:

    Thomas W. Bunch II, Esq.
    Post Office Box 944
    Columbia, SC 29202

    tbunch@robinsonlaw.com

                                            /s/ Philip Fairbanks_____
                                            Philip Fairbanks